KENEDY TOWN & IMPROVEMENT CO. v. FIRST NAT. BANK OF VICTORIA et al.

(Court of Civil Appeals of Texas. March 2, 1911. On Motion for Rehearing, April 13, 1911.)

1. VENUE (§ 27*)—RESIDENCE OF PARTIES—ASSIGNED CAUSE OF ACTION.

Where the holder of an indebtedness makes a bona fide assignment thereof and guarantees its payment in whole or in part, the assignee may sue the debtor and the assignor in the same suit in the county of the residence of the latter.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 41; Dec. Dig. § 27.*]

2. ASSIGNMENTS (§ 54*)—VALIDITY—CONSIDERATION.

Where there is an actual bona fide assignment of a claim, the assignee acquires title,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

though he pays no consideration; the failure to pay a consideration being but a circumstance bearing on the good faith of the transaction.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 112; Dec. Dig. § 54.*]

**3. ASSIGNMENTS (§ 129*)—VALIDITY.**

Where one who transferred a claim and guaranteed its payment obtained a credit on a debt he owed the assignee, he could properly join the assignee in an action on the claim, and his so doing did not show want of good faith in the assignment.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 214; Dec. Dig. § 129.*].

**4. JURY (§ 25*)—RIGHT TO TRIAL BY JURY—STATUTES.**

Sayles' Ann. Civ. St. art. 3189, providing that a party desiring a jury trial must make application therefor on the first day of the term at which the suit is to be tried, enacted pursuant to Const. art. 1, § 15, empowering the Legislature to pass laws regulating the right to trial by jury, is not mandatory, and a litigant may only be deprived of a jury trial when his delay in demanding a jury and tendering the jury fee will probably work injury to the adverse party.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 25.*]

**5. DAMAGES (§ 148*)—BREACH OF CONTRACT—PETITION—SUFFICIENCY.**

A petition in an action for breach of a building contract by the owner's refusal to permit the contractor to perform the work, which alleges that the contractor hired workmen and sent them to the place where the work was to be done and shipped tools and materials for use in the work, and that the owner subsequently breached the contract, necessitating the reshipping of the tools and materials, and the payment of charges, board, and expenses of the men, and that the contractor paid a specified sum therefor, sufficiently sets forth the damages sustained.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 412; Dec. Dig. § 148.*]

**6. DAMAGES (§ 147*)—BREACH OF CONTRACT—PETITION—SUFFICIENCY.**

A petition in an action for breach of a building contract by the owner's refusal to permit the contractor to perform, which demanded recovery of the profits the contractor would have made in completing the work, should allege the cost of the materials necessary for use in constructing the building and the cost of labor necessary in order to specifically allege the damages claimed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 412; Dec. Dig. § 147.*]

**7. CONTRACTS (§ 211*)—BUILDING CONTRACTS—CONSTRUCTION.**

A building contract stipulating for the completion of the building by a designated date and for a penalty for each day thereafter the building remains unfinished makes time for the completion of the building of the essence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 938–943; Dec. Dig. § 211.*]

**8. CONTRACTS (§ 211*)—BUILDING CONTRACTS—REFUSAL TO PERMIT CONTRACTOR TO BEGIN WORK—JUSTIFICATION.**

The failure of one who has contracted to complete a building within a specified time to begin work at the time agreed on does not justify the owner in refusing to permit the contractor to begin work at a later date, unless the time fixed for the beginning is of the essence of the contract which can only be shown by proof that the building cannot be finished at the time agreed on for its completion, unless the work starts at the date agreed on.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 211.*]

## On Motion for Rehearing.

**9. JURY (§ 25*)—RIGHT TO TRIAL BY JURY—DELAY IN DEMANDING.**

Where a party did not demand a jury trial on the first day of the term as required by Sayles' Ann. Civ. St. 1897, art. 3189, and his delay in demanding a jury might, if granted, result in carrying the case over the term, because of the necessity of further postponement of the case at the time fixed, to permit the trial of other cases having precedence, the refusal to grant a jury trial was within the discretion of the court.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 25.*]

**10. APPEAL AND ERROR (§ 956*)—DISCRETION—RULINGS ON DEMAND FOR JURY TRIAL.**

In the absence of a clear showing of an abuse of discretion, the refusal of the trial court to grant a jury trial, where the demand for a jury was not made within the time prescribed by statute, will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3810; Dec. Dig. § 956.*]

Appeal from District Court, Victoria County; J. T. Linebaugh, Special Judge.

Action by the First National Bank of Victoria against the Kenedy Town & Improvement Company and another. From a judgment for plaintiff against defendant named and for codefendant, the Bailey Mills Company, against defendant named, it appeals. Reversed and remanded.

J. C. Scott and Dupree & Pool, for appellant. Fly & Daniel and Proctor, Vandenberge & Crain, for appellees.

McMEANS, J. Appellee the First National Bank of Victoria, a banking corporation with its office and place of business at Victoria, in Victoria county, brought suit against appellant, the Kenedy Town & Improvement Company, a private corporation having its office and place of business in Nueces county, and appellee the Bailey Mills Company, a firm composed of Ira P. Bailey, alone, a resident of Victoria county, and for grounds of recovery appellee First National Bank of Victoria alleges in its petition, in substance and effect, that on September 11, 1907, the Bailey Mills Company made a written contract with the Kenedy Town & Improvement Company wherein it agreed to erect for said improvement company a hotel building at Sarita, in Cameron county, and to "well and perfectly erect, finish, and deliver" the building on or before December 26, 1907, the improvement company agreeing to pay the mills company for the completion of said building the sum of $15,800. The bank further alleges in its petition that the mills company, in pursuance of the building contract made by him with appellant, hired carpenters and laborers, and sent them to the town of Sarita "to prosecute said work,"

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

and shipped tools to the town of Sarita, and also four cars of gravel to be used in the erection of the building; and, after he had sent such laborers and had shipped said tools and material to Sarita, the appellant breached the building contract, and denied the mills company the privilege of going onto the lots where the building was to be erected and proceeding to carry out its part of the contract, and the mills company was forced to reship the tools and material that he had already sent to the town of Sarita, and was forced to pay the charges, board, and other expenses of the mechanics and laborers he had sent to Sarita for the purpose of erecting said building; it being specially alleged that the mills company paid the amount of $34.48 freight on the tools shipped to Sarita and returned, and the further sum of $66.53 freight on the cars of gravel which were shipped to Sarita and returned to Corpus Christi, and also the further sum of $48.85 paid as railroad fare, and for board and wages of laborers sent to Sarita for erecting said building, and it is also alleged in the petition that the Bailey Mills Company would have realized a net profit out of said building contract, if they had been permitted to complete said building, of $2,850.14. And it is further alleged in the petition that it would not have cost the Bailey Mills Company more than $12,949.86 to have completed the building in accordance with the contract, which is $2,850.14 less than the contract price of same, and, by the alleged breach of the agreement on the part of the appellant, appellee the Bailey Mills Company was damaged in said sum of $2,850.14, and also in said sum expended for freight, etc., aggregating $149.86, the total damages claimed aggregating $3,000. It is further alleged in the petition that on October 24, 1908, appellee the Bailey Mills Company was indebted to appellee bank on two promissory notes, and, being desirous of paying said indebtedness, he transferred to the bank, together with other claims, the amount claimed to be due him as damages from appellant, alleged to be $3,000, and guaranteed the payment thereof, and such transfer was received and accepted by the bank and credited on the indebtedness held by it against him. Judgment is asked by appellee bank for $3,000 against appellant, for the alleged breach by it of the building contract, and also against appellee mills company on the written guaranty of the payment of said amount by appellant.

The defendant the Bailey Mills Company for answer admitted the truth of the allegations in plaintiff's petition, and joined in the prayer for judgment for plaintiff as in the petition prayed for. The defendant Kennedy Town & Improvement Company filed a plea of privilege to be sued in Nueces county, the county of its residence, pleaded a general demurrer and several special exceptions, a general denial, and filed a special plea setting up special matters in defense.

In its plea of privilege to be sued in the county of Nueces, appellant alleges that the assignment of the building contract between it and its codefendant, Ira P. Bailey, to the appellee bank, and the guaranty thereof by the said Bailey, as alleged in the petition, were not made in good faith, but same are only pretended and simulated, and are not based on a valuable consideration, and the same were made for the fraudulent purpose of defeating the right of appellant to be sued on said building contract in Nueces county, the county of its residence, and of enabling the plaintiff bank to sue appellant in Victoria county, and for no other purpose, and said assignment and guaranty are a fraud on the jurisdiction of the trial court.

A trial before the court without a jury resulted in a judgment for plaintiff against defendant Kenedy Town & Improvement Company as principal, and against the defendant Bailey Mills Company as guarantor, for $3,000, being the amount claimed by plaintiff in its petition, and from this judgment the defendant Kenedy Town & Improvement Company has prosecuted this appeal.

Appellant by its first assignment of error complains of the action of the court in overruling its exception to plaintiff's petition, which, in effect, is that the petition shows that the district court of Victoria county did not have jurisdiction of the case as to appellant, because it appeared from the allegations of the petition that the venue of this case, as to appellant, is in Nueces county, and that the suit as against appellant should have been filed in Nueces county. The proposition following this assignment is as follows: "It affirmatively appears from the allegations of the petition that the assigned contract on which the suit is brought in Victoria county was, according to its provisions, to have been performed in Cameron county, and the appellant, who is one of the two parties in the contract, and is the only real defendant in the suit brought thereon, is a resident of Nueces county, and it further appears from the petition that no consideration was paid by appellee bank for the assignment of the contract, and the assignment is only simulated, and therefore the district court of Victoria county did not have jurisdiction of this cause as to appellant."

By its eighth assignment appellant contends that the court erred in overruling in the final judgment appellant's plea of privilege to be sued in Nueces county; the grounds of error, as stated in subjoined proposition, being that the evidence shows the assignment of the building contract by the Bailey Mills Company to appellee was without consideration, and was a pretended assignment, and that it was made for the sole and ex-

clusive purpose of committing a fraud on the jurisdiction of the district court of Victoria county, and to enable appellee directly, and the Bailey Mills Company indirectly, to sue appellant, a resident of Nueces county, in Victoria county, and to thereby defraud appellant of its constitutional and legal right to a trial of the case in Nueces county, the county of its residence. The evidence is without contradiction that the Bailey Mills Company, being indebted to appellee in a large amount, transferred and assigned, and guaranteed the payment, to appellee, of the contract made by it with appellant; nor is it questioned that appellee entered as a credit upon the notes of the Bailey Mills Company the sum of $3,000, being the amount claimed by the latter as being due to it under the contract. The allegations of the petition are substantially set out in the statement of the case above.

The evidence upon which appellant relies as sustaining its contention is, first, that the Bailey Mills Company as its codefendant joined forces with the appellee in the trial, admitted the truth of the allegations of plaintiff's petition in its answer, and joined in the prayer of the petition for judgment against itself and its codefendant, and presented the identical exceptions that were urged by plaintiff to the answer and supplemental answer of appellant; and, second, the testimony of M. Ucovitch, who testified to a conversation between himself and S. M. Bailey, the brother and agent of Ira P. Bailey, in regard to the hotel building at Sarita. This witness testified: "He [S. M. Bailey] told me that Mr. Kenedy told him, wrote him, and telephoned him not to come on the ground. And I said: 'That's funny, why don't you do it?' And he then said: 'You can't fool with that kind of fellow.' He said that he was going to bring them to Victoria, but I didn't know what he meant. He said: 'I will fix him. I will fix him.' He was raving about Mr. Kenedy. He used foul language. Mr. Kenedy was not there at the time." On cross-examination this witness said: "I had a conversation with Mr. Bailey about shipping gravel to Sarita about September 26, 1907. Mr. Bailey told me that the gravel that was to go to Sarita would be shipped back to Corpus; that his attorneys advised him to make his claim. Told me that he was going to ship it to Sarita to make his claim good; but that he was going to reship it to Corpus Christi to be used in our building. I understood that it had already been shipped to Sarita, and that he was preparing at that time to reship it to Corpus Christi. He did not tell me two weeks before that time that he was going to sue Mr. Kenedy. He told me that at the same time. He told me about two weeks before that that the contract had been broken. He told me in that conversation that he was going to bring Mr. Kenedy to Victoria and sue him on or after that date."

136 S.W.—36

S. M. Bailey in his testimony denied that portion of the testimony of the witness Ucovitch in which Ucovitch testified that he, S. M. Bailey, said that he was going to bring Kenedy to Victoria to sue him and that he would "fix" him.

[1] We think the assignments fail to point out any reversible error. It is well settled by the decisions of the courts of this state that where the holder of an indebtedness makes a bona fide assignment of such indebtedness to a third person, and guarantees the payment thereof, in whole or in part, the assignee has the clear right to sue both the principal debtor and the guarantor in the same suit in the county of the residence of the guarantor. Leahy v. Ortiz, 38 Tex. Civ. App. 314, 85 S. W. 824; Pearce v. Wallis, 124 S. W. 496; Turner v. Brooks, 2 Tex. Civ. App. 451, 21 S. W. 404; Christie v. Gunter, 26 Tex. 700; Anderson v. Bank, 86 Tex. 618, 28 S. W. 344. Bergstrom v. Burns, 24 S. W. 1098; Lyons v. Daugherty, 26 S. W. 146; Cleveland v. Campbell, 38 S. W. 219; Allen v. Edrington, 125 S. W. 362; Vaugh v. Bank, 126 S. W. 690.

[2] The petition alleges, and the proof is undisputed, that Ira P. Bailey, who composed the Bailey Mills Company, was a resident of Victoria county, and it is clearly alleged that appellant was indebted to the Bailey Mills Company, and that said company made a valid, bona fide assignment of the indebtedness to appellee, and guaranteed the payment of the same. The proof adduced under this issue was sufficient to establish the allegations of the petition. The fact that no consideration was paid by the appellee bank for the assignment cannot avail. As held in Pearce v. Wallis, supra: "If there was an actual bona fide assignment of the claim, then the plaintiff acquired title, even though he may have paid no consideration. The failure to pay a consideration might constitute an important circumstance bearing upon the good faith of the transaction, but it would not necessarily and as a matter of law have controlling effect."

[3] Nor do we think that the fact that the Bailey Mills Company and appellee made a common fight to recover the judgment sought by plaintiff against appellant a circumstance that is entitled to any serious weight. Bailey, by transferring the claim and guaranteeing its payment, had procured a credit upon a debt he owed the bank. If the claim was paid he was relieved of so much of the debt as the claim would discharge. If not, then he would be held under his guaranty. It was manifestly to his interest that the assigned claim be paid, and it cannot be said under such circumstances that his activity in behalf of appellee was a circumstance tending to show a want of good faith. We think the assignments are not well taken, and they are overruled.

The seventh assignment of error is as follows: "The court erred in denying this de-

fendant the right of a trial of this cause by a jury, and in refusing to grant this defendant's request for a jury, because this defendant was legally entitled to a jury for the trial of this cause." The term of the court at which the case was tried began November 22, 1909, and ended December 25, 1909. The attorney who represented the appellant did not reside in Victoria county, but resided in Nueces county. On October 23, 1909, appellant's attorney wrote to the attorneys of appellee bank, at Victoria, asking them to notify him by return mail when the district court of Victoria county would convene, and also when the case would be reached for trial, stating that it was his understanding that it would follow the trial of another case, which he named, and suggesting that the two cases be set for some particular day for trial for the mutual convenience of all the parties. This letter was received by appellee's attorneys, and on October 27, 1909, they wrote to appellant's attorney, informing him of the date of the convening of the court, but stating that it would be impossible to make a setting of the case at that time on account of the condition of the docket, but that they would make a setting of the same as soon as the court met and advise him, stating that they were anxious to try the case at that term. On the morning the court convened, appellant's attorney placed himself in communication by long-distance telephone with the attorneys of appellee, and suggested to the latter that as the witnesses in this case and in the Ucovitch Case, also pending in said court, were the same, it would be well to set both cases for trial upon the same date, saying he would see the attorney for Ucovitch, who also resided in Corpus Christi, about it. Appellee's attorneys said this would be satisfactory, and to let them know. Appellant's attorney thereupon sought the attorney for Ucovitch, but did not find him till late that evening. Early the next morning, Tuesday, appellant's attorney again communicated by telephone with the attorneys of appellee, and was informed by them that this case was set for trial on the following day, Wednesday morning. This setting of the case for that day had never been agreed to by appellant. Appellant's attorney started to Victoria as soon as he could, which was Tuesday evening, and reached there the next morning. He at once went to the courthouse, and met the district judge, who was just leaving, not being able to hold court on account of sickness. He told the judge he wanted a jury for the trial of the case, and the judge told him to deposit the jury fee with the clerk, and to tell the clerk that a jury was demanded in the case. Appellant's attorney thereupon paid the jury fee to the clerk, who gave him a receipt therefor. The jury for the week had been discharged on the second day of the term, Tuesday. The special judge before whom the case was tried was elected as such by the local bar on November 26, 1909, which was Friday of the first week of the term. The case was called for trial on that day, and when called, appellant's attorney stated to the special judge that the plaintiff was ready to go into a trial, but wanted a trial before a jury, and asked that the case be postponed until the following week, when there would be a jury in attendance. This request was denied, and appellant forced to go to trial without a jury; the special judge giving as a reason for this action that, owing to the setting of other civil cases and the setting of the criminal docket to follow, the postponement, if granted, would necessarily result in a continuance of the case for the term. While the judgment recites that the trial was entered into on November 26, 1909, we think this is an error, for the amended pleadings of the appellant, upon which the case was tried, and the first supplemental petition of appellee, were not filed until Saturday, November 27th. It was also stated in the bill of exceptions taken in this connection that, when a jury was demanded, it was then too late in the evening to summon a jury, which, we conceive, would not have been a valid objection had the demand been made on Friday, and not on Saturday. The trial of the case was not concluded until Wednesday of the second week.

[4] Under these facts, did the court err in refusing appellant the right of trial by a jury? We think so. Section 15 of article 1, Constitution of 1876, declares that the right of trial by jury shall remain inviolate, and that the Legislature shall pass such laws as may be needed to regulate the same and maintain its purity and efficiency. In obedience to this behest, the Legislature prescribed certain regulations, among which was the enactment brought forward in Sayles' Ann. Civ. St. 1897, as article 3189, which provides that a party to a civil suit desiring a jury trial shall make proper application therefor on the first day of the term of court at which the suit is to be tried, unless the same be an appearance case, in which event the application shall be made on default day. It has been held that this article is not mandatory. Gallagher v. Goldfrank, 63 Tex. 474. In the case cited it is said that "a right expressly guaranteed by the Constitution ought not to be disallowed, even in cases in which the Legislature is empowered to enact laws to regulate its exercise, because the act was not done within the time prescribed, unless the law, so made, clearly evidences the legislative intention that the thing required to be done before the right can be exercised shall be done within a given time or not at all." In Allen v. Plummer, 71 Tex. 546, 9 S. W. 672, it is held that the articles of the statute which direct that the demand for a jury shall be made and the jury fee paid upon the first day of the term are not strictly mandatory, and the

failure to make the payment on that day does not forfeit the right to have a trial by jury, when such failure does not operate to the prejudice of the opposite party, citing Allyn v. Willis, 65 Tex. 65; Gallagher v. Goldfrank, supra; Hardin v. Blackshear, 60 Tex. 132; Berry v. Railroad, 60 Tex. 654. In Scott v. Rowland, 14 Tex. Civ. App. 370, 37 S. W. 381, this court held that it is not the intention of the statute to deny to any litigant the right of trial by jury, but to regulate the exercise of such for the purpose of facilitating business and lessening the expenses of the courts, and that a litigant can only be deprived of such privilege when his delay in demanding a jury and tendering the jury fee will probably work injury to his adversary.

If appellant's delay in demanding a jury was not excusable, we think under the facts stated it was not culpably negligent in not making the demand sooner. Both appellant and its attorney resided in a distant county from that in which the court was held. Appellant's attorney relied upon the attorneys of appellee to arrange the setting of not only this but another case wherein the litigants, attorneys, and witnesses were nonresidents of the county in which the cases were pending. They had the right, we think, to rely upon the setting being made at such time as to allow the parties, their attorneys, and witnesses to reach the court in such time as to avail themselves of all the rights accorded them by law, including a trial by jury. There was no agreement that the case should be set for Wednesday of the first week. Yet the setting was not made, or at least the appellant was not notified of it, until Tuesday, the day before the case was to be tried; and on that day the jury for the week was discharged. Appellant's attorney thereafter reached Victoria as soon as he could, at once made demand for a jury, and paid the jury fee. The regular judge on account of sickness could not proceed with the business of the court, and, so far as the record shows, no court business was transacted until Friday, when a special judge was elected by the local bar, and this case was then called for trial by him. The amended pleadings were filed next day, Saturday, and the issues of law were heard and determined by him on that day, and appellant was required to proceed to trial before him, notwithstanding its request that the case go over till Monday in order to obtain a jury trial; it then being too late to get a jury that afternoon. Would any of the rights of appellee have been prejudiced by the postponement? The judge in the bill of exceptions says that it appeared to the court that a continuance would necessarily have resulted had the case been passed as requested. The record indicates the contrary. It must have been apparent to the court that the case could not be tried on the facts on Saturday after the issues of law arising on the pleadings had been determined. The record shows that the trial was not in fact concluded until the following Wednesday. A jury was summoned for Monday of the second week, and for aught that appears to the contrary was in attendance from that day during the balance of the time occupied in trying this case before the court. A postponement of a few hours on Saturday would have resulted in carrying the case over until Monday, when a jury would have been in attendance, and the issues of fact could probably have been tried with a jury within practically the same time that was consumed in the trial before the judge. As it was the jury was preforce idle while the trial proceeded. We think in view of all this that appellee would not have been prejudiced by the postponement, and that in the circumstances a denial to appellant of the right of a trial by a jury was erroneous, and that for this error the judgment of the court below must be reversed.

By its second assignment appellant complains of the action of the court in overruling its fifth special exception to plaintiff's petition, which, in effect, is that the allegations of the petition relative to the amount of damages sustained by plaintiff are too general, vague, and indefinite to form the basis of proving the profits that might have resulted but for defendant's alleged breach of the contract, and do not advise defendant of the character and extent of such profits.

[5] We think the allegations of the petition in so far as they relate to the items of freight charges on the tools and gravel, and the railroad fare and board of the laborers sent by the Bailey Mills Company to Sarita to start the work, are sufficiently specific. [6] But we think that the allegations as to the profits that would have been derived from the execution of the contract should have been more specific. In reaching a conclusion as to what such profits would be, the contractor must necessarily have calculated the cost of the lumber, brick, hardware, glass, and other material necessary to be used in constructing the building as well as the cost of labor in placing the materials into the building, and we see no good reason why the cost of these items should not have been stated in the petition.

Appellant alleged in the answer that the contract of the Bailey Mills Company to complete the building at the time agreed upon, viz., December 26, 1907, was of the essence of the contract. This was excepted to by appellee on the grounds that said allegation is purely a question of the contract sued on, and, further, because said allegation is an attempt to vary the terms of the written contract.

[7] The contract, which is attached to and made a part of the pleadings of plaintiff, contained the stipulation that the building should be completed by December 26, 1907;

and also provided for a penalty of $10 per day to be paid by the contractor for each day thereafter the building should remain unfinished. The court sustained the exception, and we think this was error. We cannot agree to the contention of the appellee that in order to constitute time as of the essence of the contract the contract itself must so clearly provide. The authorities hold otherwise. In Edwards v. Atkinson, 14 Tex. 373, it is held that time may be of the essence of the contract not only by the express agreement of the parties, but where the circumstances of the case show such must have been their intention. Nor do we think that the allegation was an attempt to vary by parol the written contract sued upon.

The defendant in its answer alleged that it made a parol agreement with the Bailey Mills Company at the time of the execution of the contract that the building in question should be actually begun on or before, and not later than, September 23, 1907, which agreement, it is alleged, was a consideration inducing the signing of the contract by appellant. This was excepted to on the grounds that the allegation was an attempt to vary the terms of the written contract by parol, and that such agreement was without consideration. The exceptions were sustained. Appellant in its proposition under the assignment presenting the point contends that the allegation excepted to, taken in connection with the further allegation that the Bailey Mills Company did not begin the construction on September 23, 1907, the date agreed upon, presented a valid defense to plaintiff's suit.

[8] The assignment must be overruled. The failure of the contractor to begin the construction of the building at the time agreed upon could not justify the owner in refusing to permit him to begin at a later date, unless it should appear that the time fixed for the beginning was of the essence of the contract, and this could be shown only by proving that the building could not be finished at the time agreed upon for its completion unless the work should start at the date agreed upon, and defendant's answer contained no such allegation. Hence the proposition which asserts that the allegation excepted to, taken in connection with the further allegation that the construction did not begin on the date agreed upon presented a valid defense to plaintiff's suit, is not sound.

As the judgment of the court below must be reversed for the errors indicated, the necessity of passing upon the assignment that the judgment is not supported by the law and the evidence and the assignments based upon the exceptions to the court's findings of fact and failure to make additional findings upon the request of appellee is obviated.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

[9] On consideration of appellees' motion for rehearing, we conclude that we erred in holding that the refusal of the trial court to grant appellant's request for a postponement in order that a trial before jury might be had was reversible error. In reaching the conclusion that we did, we were not unmindful that the trial court had stated in his qualification to the bill of exception that to grant a postponement would on account of the condition of the docket necessarily result in a continuance of the case for the term. We thought the record indicated otherwise and stated the reasons for this belief in our opinion. Upon further consideration, we now think that such belief was not justified by the record, and that the court in refusing to postpone did not abuse the discretion so wisely vested in it by law in such matters. We at first thought that, inasmuch as the trial on the merits carried the case over into the next week, and that it was not concluded until Wednesday, a postponement of the case for the few hours remaining in Saturday, after the issues of law arising on the pleadings were determined, would have resulted in the case going over until Monday, at which time, a jury being present, a trial by jury could have been had. There was however nothing in the record to indicate (and this we overlooked) that there were not other cases already set for Monday having precedence, nor does it appear from the record that there were not a sufficient number of cases on the docket which would have had precedence of this case, had it been postponed, to consume the entire time of the court for the term in their trial.

[10] The trial judge must be presumed to have known the condition of the docket, and, in the absence of a clear showing of an abuse of discretion vested in the trial judge, his ruling should be upheld. Besides this, we are doubtful if we correctly held under the facts relied upon by appellant that the demand for a jury was made at such a time and with such diligence as entitled it to a postponement or continuance in order to obtain a trial by jury. We went further in so holding than the Supreme Court did in Allen v. Plummer, 71 Tex. 546, 9 S. W. 672, of which it is said by the Supreme Court in Petri v. Bank, 84 Tex. 155, 19 S. W. 380: "That case pushes the doctrine to the extreme verge of propriety, and we are averse to proceeding further on that line."

We adhere, however, to our conclusion that the court committed reversible error in its rulings in other matters pointed out in our opinion. The motion is overruled.

Overruled.