## UNITED IRR. CO. v. CARSON PETROLEUM CO. (No. 7556.)

(Court of Civil Appeals of Texas. San Antonio. April 21, 1926. Rehearing Denied May 19, 1926.)

1. Sales ⬅➡81(1)—Time held of the essence of contract to supply fuel oil providing the entire order be completed not later than specified date.

Time *held* of the essence of a contract which was made May 7, 1921, to supply 75 cars of fuel oil, the entire order to be completed not later than September 1, 1921, in view of the frequent and substantial fluctuations in the price of fuel oil.

2. Sales ⬅➡181(11)—Evidence held sufficient to support finding that seller did not waive provisions of contract for supplying fuel oil requiring order to be completed by specified date.

Evidence *held* sufficient to sustain finding that seller did not waive provisions of contract for supplying fuel oil, requiring order to be completed by September 1, 1921, though he shipped two cars September 3, and three cars September 6, on orders received August 24, and requested advice as to further shipments.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by the United Irrigation Company against the Carson Petroleum Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellant.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellee.

SMITH, J. [1] On May 7, 1921, the United Irrigation Company agreed to purchase 75 cars of fuel oil from the Carson Petroleum Company, which agreed to sell the product to the irrigation company at the price of 55 cents a barrel, f. o. b. cars at Burkburnett. The irrigation company was operating in Hidalgo county, the petroleum company had its Texas domicile at Dallas, and the oil was to be obtained by the seller from the refinery of another concern in Wichita county. The contract between the parties was in writing, and contained these stipulations:

"It is understood that shipments will begin on this order some time during the week beginning May 8th, and that shipments will go forward thereafter at the rate of 17 to 19 cars per month, and entire order to be completed not later than September 1, 1921.

"*Monthly Shipments.* If the contract extends over a period of months, shipments or deliveries shall be in equal monthly quantities unless otherwise stated in the memorandum, the purchaser having the option of varying the monthly quantities by 10 per cent., provided that, subject to the other provisions of this contract, the agreed quantity must be taken within the time fixed."

Because of these express stipulations in the contract, and of the fact that the price of fuel oil was subject to frequent and substantial fluctuations, whereby contracts providing for delivery of fixed quantities of the product over long periods would involve unusual hazards to the parties, the agreement sued on must be construed as one in which time was of the essence of the contract. Todd v. Caldwell, 10 Tex. 236; Edwards v. Atkinson, 14 Tex. 373; Reagan Co. v. Dickson Co., 55 Tex. Civ. App. 509, 121 S. W. 533; Berg v. San Antonio St. Ry. Co., 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929; Von Harten v. Nevels (Tex. Civ. App.) 234 S. W. 676.

[2] It was contemplated by the parties, and will be implied from the language of their agreement, that the oil should be delivered as and when ordered by the buyer, the irrigation company, but nevertheless within the time stipulated. Late in June, however, the irrigation company directed the petroleum company to curtail the shipments, on July 11 it directed that shipments be suspended until further notice, and on August 1 requested the seller to "please stop shipment of oil until further notice." These requests were based upon the buyer's shortage of storage space, and because its plant was shut down. On August 12 the seller requested the buyer to complete its orders, and this request was repeated and emphasized on August 23 and August 25. Ten cars were shipped in May, 17 in June, 15 in July, 5 in August, and 6 in September, which were ordered on August 24, making a total of 53 cars delivered under the contract. On August 25, the seller wrote the buyer:

"We have your wire of August 24th instructing us to ship three cars fuel oil to you August 29th followed by three additional cars September 3d, and we have to-day instructed our refinery people accordingly. Would appreciate your advising us as quickly as possible rate of shipment on your order after we make shipment of the three cars September 3d. Your prompt attention hereto will be appreciated."

The buyer made no response to this communication, but representatives of the parties had a conference in the first part of October, when the buyer was informed that, as the contract period had expired and shipments thereunder had been prevented by the buyer, the seller had elected not to supply the remaining 22 cars called for in the contract.

It is of course true, as appellant contends, that the seller had the power to waive the provision for the termination of the contract on September 1st, and to fill orders received from the buyer thereafter. It is contended by appellant that appellee did waive that provision by its conduct, and particularly by

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(283 S.W.)

making the shipments of two and three cars, respectively, on September 3 and 6, which were ordered on August 24. But the question of waiver was one of fact, which the court resolved against appellant. We think the evidence supported this finding. In its letter of August 25 appellee urged appellant to complete its orders as quickly as possible, and for immediate advice as to appellant's intention in the matter, but appellant ignored the request until in October, when it requested shipments of two cars at the time, and three cars a week later. But appellant insisted then and thereafter that it would stand on its contract and ship no more oil thereunder. Appellee was clearly within its rights in taking this attitude. It is true that as long as appellee showed a willingness and intention to fill appellant's orders, the latter would have been justified in demanding delivery under the contract. But the fact, if true, that appellee showed a willingness to indulge appellant even after the contract period had expired did not constitute a complete waiver, or give appellant the right to prolong the time of fulfillment indefinitely into the future. The court found by implication, upon sufficient evidence, that appellant did not within a reasonable time accept and act upon appellee's final offer to complete the contract, and failing to so accept the offer within a reasonable time, and after appellee had withdrawn it, appellant could not demand a further extension.

The judgment is affirmed.